## SABIN v. UNITED STATES.
### Nos. H–391, J–651.

Court of Claims.
Oct. 20, 1930.

74

Arthur H. Deibert, of Washington, D. C. (Charles Harwood, of New York City, on the brief), for plaintiff.

Charles R. Pollard, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (R. P. Hertzog, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The tax in controversy is for 1915 and 1916. There is no controversy as to the correctness of the amounts collected. The issues relate entirely to the statute of limitation.

Plaintiff contends (1) that the instrument executed and filed by him March 6, 1922, did not constitute a valid consent or waiver under the provisions of section 250(d) of the Revenue Act of 1921 (42 Stat. 265), for the

reason that such instrument was withdrawn and revoked by him prior to the date it was signed or agreed to in writing by the Commissioner of Internal Revenue; (2) that even if this instrument of March 6, 1922, be held to constitute a valid consent agreement under the Revenue Act of 1921, both the assessment and collection of the additional tax at the time made were illegal because they were made at an unreasonable time after notice of revocation and withdrawal was given by plaintiff; (3) that even though the instrument of March 6, 1922, constituted a valid consent agreement under the statute, it did not confer upon the commissioner any rights with respect to the tax for 1915 for the reason that the statute of limitations for that year had expired prior to the execution of the consent and, further, the waiver related to taxes due for 1915 "under the act of Congress dated September 8, 1916"; (4) that even if the assessment of the tax was not barred, collection thereof was barred because there was no waiver of the period of limitation with respect to collection; (5) that the allowance of the claim for refund filed by plaintiff is authorized under the provisions of section 607 of the Revenue Act of 1928 (26 USCA § 2607).

On the first issue we are of opinion that the waiver was valid. It appears that prior to the time when the matter of the waiver now in controversy arose an investigation and report had been made to the commissioner by the field agents, and that in connection with consideration thereof and audit of plaintiff's returns for the years involved by the commissioner he had directed the field agents to secure additional information from the taxpayer; that the agent had gone about such additional investigation whereupon the secretary of the plaintiff, who apparently had the entire matter in charge and was responsible for the compilation of necessary information required by the commissioner, advised the revenue agent on February 9, 1922, that it "has been practically impossible for me to compile the data requested"; that the reorganization of the Guaranty Trust Company had deprived him of the services of his assistants, making it necessary that he give the tax matter his personal attention; that it was necessary for him to go over numerous records from 1913 to 1916, inclusive, running into thousands of different accounts; and that it was impossible for him to find time enough to give sufficient attention to the matter. For these reasons a request on behalf of plaintiff was made for an extension to May 1, 1922.

Presumably the agent transmitted this request to the commissioner. Later, on March 6, 1922, after a conversation on that date between the revenue agent at New York and the plaintiff's secretary with reference to the tax matter, the plaintiff signed a waiver which was addressed to the Commissioner of Internal Revenue, and, on the same day, plaintiff's secretary forwarded this waiver to the investigating revenue agent with a letter signed by him stating as follows:

"Agreeable to your conversation this morning, I am sending you herewith waiver signed by Mr. Sabin, waiving any statutory limitations in connection with taxes which may be found due for 1915 and 1916, together with a copy of my letter dated February 9, requesting an extension to May 1 for the additional information which the department has requested."

In this letter the agent was requested to take the matter up with Washington and "advise me as soon as possible whether it will be agreeable for them to grant this extension as requested." This letter and the waiver were forwarded to the commissioner's office at Washington.

On March 9, 1922, before these papers reached the attention of the Bureau of Internal Revenue at Washington, the commissioner's office wrote plaintiff with reference to the tax liability for the years involved and inclosed waivers of the statute of limitation. The provisions of these waivers are not disclosed by the record. Upon receipt of this letter by plaintiff, his secretary wrote the Deputy Commissioner of Internal Revenue who had signed the aforementioned letter in which he stated—

"Replying to your letter of March 9, would advise that Mr. Sabin signed waiver, as per the enclosed copy, on March 6, waiving statutory limitation in connection with additional taxes that might be found due for the years 1915 and 1916. * * *

"Should this waiver not prove entirely satisfactory, if you will kindly have same returned, I will substitute waivers as enclosed in your letter."

This letter was received by the Bureau of Internal Revenue on March 10, 1922. Thereafter, on April 8, 1922, the office of the Commissioner of Internal Revenue in a letter signed by the deputy commissioner acknowledged receipt of the waiver and of the letter offering to execute the waivers sent to the taxpayer by the bureau if the one of March 6 was not satisfactory and advised plaintiff

that the original waiver had been received and was with the case. This was sufficient advice from the commissioner's office that the waiver had been accepted. On the same date the office of the Commissioner of Internal Revenue in a letter signed by the deputy commissioner addressed to the supervising internal revenue agent at New York, who had theretofore been directed to make an additional investigation, advised the supervising agent that the plaintiff had executed a waiver and that as "the interests of the Government will not necessarily be jeopardized" by the extension requested, the same was granted to May 1. Thereafter the matter proceeded in the usual way until November 1, 1922, six months after the revenue agent had completed his investigation and had furnished the commissioner with the additional information requested, when the plaintiff by his attorney in fact undertook to withdraw and revoke the waiver of March 6, 1922. On November 21, 1922, the commissioner's office in a letter signed by the deputy commissioner advised plaintiff's attorney in fact that that office refused the plaintiff's request to revoke and withdraw the waiver. At the time of the attempted revocation of the waiver the commissioner's signature had not been placed upon the same. On June 6, 1923, the commissioner advised plaintiff of the result of his audit of the returns for 1915 and 1916 and granted him a right to appeal from such determination. No appeal was taken and the additional tax so determined was assessed August 15, 1923. Demand for payment was made by the collector on September 6, 1923. A portion of the additional tax was paid November 15, 1923, and the balance was satisfied by credit made by the commissioner in March and April, 1924.

 On the first contention of the plaintiff we are of opinion that there was a sufficient consent in writing under the statute by the taxpayer and the commissioner prior to the attempted revocation by the plaintiff. The statute does not require that a consent, in order to be valid, must be in one instrument or that it shall be in any particular form. All that is required is that the consent be evidenced in writing. It is admitted by all that the plaintiff agreed in writing, but it is contended on behalf of the plaintiff that the commissioner did not do so before the taxpayer revoked his consent. The letters from the commissioner's office of April 8 to the plaintiff and, on the same day, to the internal revenue agent at New York relating specifically to the waiver constitute a suffi-

cient consent in writing by the commissioner to satisfy the requirements of the statute. The statute requires no more than that there shall be written evidence of the fact that both parties understand that the limitation period specified in the statute is not to govern the matter, and, therefore, that when a date to which the period has been extended is specified there shall be a complete understanding about it. No date was specified in the waiver in this case but the writings leave no doubt as to the understanding of the parties that the period specified in the statute was not to control. It is further insisted on behalf of plaintiff that there was no consent in writing because neither the waiver executed by the plaintiff in the form of a letter addressed to the commissioner nor the letter to the plaintiff by the supervising internal revenue agent at New York was signed by the commissioner or bore his signature. But we think when the manifold duties of the commissioner, the magnitude of the operations of the Bureau of Internal Revenue of which he is the administrative head, the vast amount of work involved, and the procedure necessary to the determination and assessment of taxes, the great number of cases considered, and the amount of correspondence and notices to be had in connection therewith, are considered that letters such as are herein involved which were from the office of the Commissioner of Internal Revenue concerning matters relative to which clearly the Deputy Commissioner of Internal Revenue had authority to act for the commissioner and in his name, it should not be said that the commissioner has not acted. It would perhaps have been better had the commissioner's name appeared on the letters, for the controversy on this point might then have been avoided, but in our opinion when a letter or writing proceeds from the office of the Commissioner of Internal Revenue relative to a waiver and showing that such waiver is accepted, even though such letter is not signed in the commissioner's name but by the deputy commissioner, it is sufficient under the statute to constitute a consent by the commissioner. The deputy commissioner had authority to act for the commissioner. There is nothing to show that the commissioner did not direct or approve that which was done. It is presumed that public officials act correctly in accordance with the law and their instructions until the contrary appears. C., M. & St. P. Ry. Co. v. United States, 244 U. S. 351, 37 S. Ct. 625, 61 L. Ed. 1184. And therefore "* * * There is a presumption that, when an order is sent out from the ap-

propriate executive department in the regular course of business, such order is with the knowledge and approval of the Secretary, unless the contrary appears." Roxford Knitting Co. v. Moore & Tierney, Inc. (C. C. A.) 265 F. 177, 190, 11 A. L. R. 1415. See also Wilcox v. Jackson, 13 Pet. 498, 10 L. Ed. 264; Williams v. United States, 1 How. 290, 11 L. Ed. 135.

The letters to the taxpayer and to the supervising agent in charge with reference to the waiver went out from the commissioner's office in the regular course of business. Since there is no evidence that they were not written with his knowledge and approval, it must be presumed that they were properly authorized and the same effect must therefore be given them as if signed by the commissioner or in his name.

We are of opinion that there is no merit in the second contention of the plaintiff that the assessment and collection of the tax was illegal because made at an unreasonable time after notice of revocation and withdrawal of the waiver by plaintiff. No arbitrary period can be regarded as a reasonable time in every case. What a reasonable time would be in any case is a matter of proof. There is no proof in this case that the determination, assessment, and collection of the tax in question were not made with all reasonable dispatch. It has been held that the commissioner acted within a reasonable time when a longer period than is involved in this case had elapsed. Cunningham Sheep & Land Co., 7 B. T. A. 652; Wm. S. Doig, Inc., 13 B. T. A. 256.

Plaintiff's next contention is that the commissioner had no authority under the waiver to assess and collect any tax for 1915 because the statutory period of five years from the time the return was filed expired before the waiver was executed, and, further, because the waiver related to taxes due for 1915 "under the revenue act of 1916" when no tax for such year was imposed by such act. The waiver was voluntarily executed by plaintiff without any representations by or on behalf of the commissioner. He was fully aware of the provisions of the statute and acted with knowledge of his rights in the premises. There is nothing in the statute that precludes the taxpayer from agreeing not to take advantage of the statute of limitation. When he does so freely, voluntarily, and without any misrepresentation on the part of the government, he ought not later to be permitted to repudiate such agreement and plead the bar of the statute. We are of opinion that under the waiver in this case the commissioner had a right to assess and collect the tax for 1915. Chas. H. Stange v. United States, 68 Ct. Cl. 395, decided November 4, 1929; Wells Bros. Co., 16 B. T. A. 79. The fact that the waiver referred to the Revenue Act of 1916, does not render it invalid as to 1915. The subject-matter of the instrument was the statute of limitation as to the years 1915 and 1916. The reference to the Revenue Act of September 8, 1916 (39 Stat. 756), follows mention of the taxable year 1916, and it does not thereby necessarily follow that the taxpayer intended to waive only the statute in respect of the taxes imposed by that act. He is presumed to have known that the 1916 act imposed no tax for 1915. Furthermore, it is clear from the instrument that it was the statute with reference to the year 1915 that he was waiving and the mention of the act of 1916, which did not relate to that year, did not invalidate the waiver.

Finally it is contended by plaintiff that even though the waiver was valid and the assessment of tax was not barred, the commissioner had no authority to collect, because there was no mention in the waiver of collection. We are of opinion that the waiver was intended to give and did give the commissioner the right to collect whatever tax might ultimately be found to be due. See Roy & Titcomb, Inc., v. United States (Ct. Cl.) 39 F. (2d) 753; Solomon v. Heiner (D. C. W. D. Pa., June 28, 1930) 43 F.(2d) 592, Vol. I, 1930 P-H Fed. Tax Service, Para. 1301. In this case it is shown that the matter of plaintiff's tax liability and the waiver was handled by his secretary, who apparently prepared the waiver or had it prepared for the plaintiff to sign. In his letter of February 9 he stated that he was giving the matter his personal attention, and in his letter of March 6 forwarding the waiver he stated that he was sending therewith waiver signed by Mr. Sabin waiving any statute of limitation in connection with taxes which might be found due for 1915 and 1916. It is clear from this that it was considered by those in charge of the matter, both for the taxpayer and the government, that the waiver should include all of the provisions of the statute of limitation with reference to the tax for the years mentioned, and there is no proof that the plaintiff intended otherwise when he executed it. In these circumstances we think the waiver

for the time of assessment included the matter of collection.

Plaintiff is not entitled to recover. The petition must be dismissed, and it is so ordered.